# IN THE SUPREME COURT OF IOWA

No. 09–1312

Filed March 18, 2011

**IN RE THE MARRIAGE OF TAMARA D. VEIT
AND GREGORY H. VEIT**

Upon the Petition of
**TAMARA D. VEIT**,

       Appellee,

And Concerning,
**GREGORY H. VEIT,**

       Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Adair County, Gregory A. Hulse, Judge.

On further review, petitioner contends court of appeals erred in reversing the district court's order requiring respondent to fulfill terms of dissolution decree. **DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT DECISION AFFIRMED.**

Rodney H. Powell of The Powell Law Firm, P.C., Norwalk, for appellant.

Willard W. Olesen of Olesen Law Firm, PLC, Greenfield, for appellee.

**HECHT, Justice.**

On further review, we are asked to determine whether a Qualified Domestic Relations Order (QDRO) fulfilled the terms of a property division prescribed in a dissolution decree. Because we conclude the QDRO did not fulfill the terms of the decree, we vacate the court of appeals' decision and affirm the district court.

## I. Background Facts and Proceedings.

Tamara Veit filed a petition for the dissolution of her marriage to Gregory Veit. On the day of trial, February 15, 2008, the parties reached an agreement resolving all pending issues in their dissolution, including the division of property. A stipulation detailing the agreement provided "[a] monetary property settlement has been reached wherein [Gregory] shall pay [Tamara] the amount of $127,000.00 for her rights to any of the marital property not specifically set out by this Stipulation." The court approved the stipulation and incorporated it in the dissolution decree, requiring Gregory to make the property settlement payment within sixty days of the entry of the decree. Neither party appealed.

About a month after the decree was entered, Gregory's attorney contacted Tamara's attorney and offered to pay the $127,000 property division with funds from Gregory's Cemen Tech employee stock ownership account.[1] The attorneys discussed the possibility of tax consequences attendant to this solution. Gregory's attorney assured Tamara's attorney there would be no tax consequences. Gregory's

---

[1]Gregory had an ownership interest in two retirement accounts at the time of the dissolution. One of the accounts was derived from Gregory's employment with Firestone and the other from his employment with Cemen Tech. The decree allocated to Tamara fifty percent of the Firestone account, but the Cemen Tech account was not mentioned in the decree.

attorney drafted a QDRO which Tamara's attorney signed on her behalf. The QDRO provided, in pertinent part,

> WHEREAS, the Decree awards the amount of $127,000 to [Tamara] to be paid by [Gregory]; and
>
> WHEREAS, the parties have agreed that the $127,000.00 award to [Tamara] shall be paid through a Qualified Domestic Relations Order (QDRO) from [Gregory's] vested interest in Cemen Tech, Inc., Employee Stock Ownership Plan;
>
> . . . .
>
> NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:
>
> . . . .
>
> 4.  [Tamara] shall be and is hereby awarded one hundred twenty-seven thousand dollars ($127,000) of [Gregory's] vested interest in [Gregory's] account, however, the same may not be increased by earnings nor decreased by losses from this date until distribution is made by the Plan.
>
> . . . .
>
> 7.  [Tamara] shall be fully responsible for any and all tax consequences resulting from the award and payment of Plan benefits to [Tamara].

The QDRO was approved by the court on March 17, 2008. When Tamara tried to withdraw the funds from the plan, however, she discovered that a tax in excess of $27,000 would be imposed. Upon advice of counsel, she did not withdraw the money and instead filed a motion to set aside or modify the QDRO or in the alternative to enforce the dissolution decree. She argued the parties had been mutually mistaken as to the tax consequences of the withdrawal. Gregory resisted the motion. Although the parties stipulated that the attorneys had been mistaken about the tax consequences of the withdrawal of funds from the Cemen Tech account, Gregory maintained the QDRO was a property settlement that could not be modified. Gregory relied in part upon an

email message he sent to his attorney during the dissolution negotiations indicating his awareness of potential tax consequences of a withdrawal from the Cemen Tech account. The email message indicates Gregory had completed a property settlement worksheet at the request of his attorney, proposing values for various items of property and suggesting how the assets and liabilities should be divided. Gregory's message included the following reference to his Cemen Tech account: "if she is going to take half early she can also pay the taxes and penalties."

The district court concluded the disposition proposed in the QDRO did not fulfill Gregory's obligation to Tamara under the divorce decree. The court ordered Gregory to perform the obligation within sixty days, leaving it to Gregory's discretion whether to reform the QDRO and pay the full amount due to Tamara from the Cemen Tech account or to utilize other assets of Gregory's choice.

Gregory appealed, and the court of appeals reversed the district court, concluding Tamara had not proved a mutual mistake in the formation of the QDRO and had borne the risk of mistake by agreeing, in the QDRO, to be responsible for any tax consequences. We granted Tamara's application for further review.

**II. Scope of Review.**

Our review of dissolution cases is de novo. *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009).

**III. Discussion.**

Tamara urges on further review that the district court correctly determined the QDRO did not fulfill Gregory's obligation under the decree. Gregory, however, contends the parties entered into an oral agreement that the QDRO would satisfy his obligation under the decree, and the court of appeals correctly determined that under the terms of the

oral agreement, as evidenced by the QDRO, Tamara assumed the risk of any tax burden.

Although Gregory argued to the district court and on appeal that the QDRO was a property settlement not subject to modification, he has abandoned that claim in the wake of our decision in *In re Marriage of Brown*, filed shortly after the district court issued its ruling on Tamara's motion to modify the QDRO. The parties now agree the QDRO is not itself a property settlement, but is merely a method of effectuating the property division contained in a dissolution decree and may be modified later without affecting the finality of the underlying decree. *Brown*, 776 N.W.2d at 648–49.

The decree provided Gregory "shall pay [Tamara] the amount of $127,000 for her rights to any property not specifically set out by this Stipulation." Neither party appealed the decree, and the property division contained therein is not subject to modification. Iowa Code § 598.21(7) (2007). Notably, the decree does not specify a source of the funds for the payment to Tamara. The clear implication of this provision is that if any tax consequences were incurred as Gregory liquidated assets to obtain the funds to make the payment to Tamara, Gregory would bear them. *See In re Marriage of Goodman*, 690 N.W.2d 279, 283 (Iowa 2004) (in construing a dissolution decree " '[e]ffect is to be given to that which is clearly implied as well as to that which is clearly expressed' " (quoting *In re Roberts' Estate*, 257 Iowa 1, 6, 131 N.W.2d 458, 461 (1964))). Under the decree, Tamara is entitled to $127,000— nothing more, nothing less.

Gregory, however, does not seek to modify the terms of the decree directly. Instead, he asserts the parties reached an oral agreement that the payment from his Cemen Tech account would fulfill his obligation

under the decree—specifically that Tamara agreed to accept less than she was entitled to by accepting the risk of any tax consequences of a withdrawal from the stock ownership plan. The party seeking to establish the existence of a contract, oral or otherwise, bears the burden of proving the existence of a contract. *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 283 (Iowa 1995). Our review of the record indicates Gregory has not sustained his burden. At the hearing on Tamara's motion to modify or set aside the QDRO, the parties stipulated as to their understanding at the time the QDRO was formed. The stipulation established that prior to the formation of the QDRO, Gregory's attorney represented to Tamara's attorney there would be no tax consequences to either party if Tamara were to withdraw $127,000 from the Cemen Tech account, and Tamara's attorney believed this representation was true.

Gregory argues his email message to his attorney, dated a month before the property settlement was entered and two months before the parties first discussed the QDRO, demonstrates he personally knew there would be tax consequences and he expected Tamara to bear them if she took money out of the Cemen Tech account. This argument fails, however, because the parties' stipulation binds Gregory to the contrary understanding that Tamara would suffer no adverse tax consequence if the Cemen Tech account were used to fund Tamara's share of the property under the dissolution decree. *Bales v. Murray*, 186 Iowa 649, 651, 171 N.W. 747, 748 (1919).

Gregory contends the language of the QDRO itself is evidence that Tamara agreed to accept less than that to which she was entitled under the decree because the QDRO states that Tamara would be responsible for any tax consequences. Again, however, the stipulation established

that the parties shared a mutual understanding there would be no tax consequences upon the withdrawal from the Cemen Tech account. Accordingly, we conclude the language of the QDRO does not establish that Tamara agreed to accept less than the $127,000 that was due her under the property settlement.

As the allocation contemplated in the QDRO does not fulfill Gregory's obligation under the decree, the district court correctly granted Tamara's motion and allowed Gregory to determine how to pay the full amount due to Tamara, either by reforming the QDRO or by utilizing other assets. Accordingly, we vacate the opinion of the court of appeals and affirm the district court's decision enforcing the dissolution decree.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT DECISION AFFIRMED.**