# IN THE COURT OF APPEALS OF IOWA

No. 16-1443
Filed July 6, 2017

IN RE THE MARRIAGE OF JOHN M. BECK, JR.
AND CATHERINE N. BECK

Upon the Petition of
**JOHN M. BECK, JR.,**
        Petitioner-Appellant,

**And Concerning**
**CATHERINE N. BECK, n/k/a CATHERINE N. SMITH,**
        Respondent-Appellee.

_____

Appeal from the Iowa District Court for Benton County, Kevin McKeever,

Judge.

John Beck appeals an order denying his application to amend a qualified

domestic relations order. **AFFIRMED.**

Jennifer L. Zahradnik of Kollmorgen, Schlue & Zahradnik, P.C., Belle

Plaine, for appellant.

Gerald J. Kucera, Cedar Rapids, for appellee.

Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

John Beck appeals an order denying his application to amend a qualified domestic relations order (QDRO).

## I.    *Background Facts and Proceedings*

John and Catherine Beck married in 1997 and divorced in 2011.  Before the dissolution decree was filed, the parties submitted a joint pretrial stipulation in which John asked to "receive one-half of [his] [Iowa Public Employees' Retirement System account (IPERS)] earned during the marriage" pursuant to the following formula:

$$\frac{\text{Number of Years Married}}{\text{Total Number of Years Worked}} \times 50\% \text{ (Marital Share)} \times \text{Monthly Benefit Amount}$$

The district court adopted John's proposal and included the following provision in the dissolution decree:

> [Catherine] is awarded one-half of the value of [John's] IPERS account accruing during the marriage.  A Qualified Domestic Relations Order shall be drafted by [John's] attorney to provide that [Catherine] shall receive her share of the accumulated benefits, utilizing the formula proposed by [John] in the Joint Pretrial Statement, unless the account can be divided without penalties or tax consequences by the holder of the account.  [John's] attorney shall prepare the necessary paperwork to effectuate this division and the Court shall retain jurisdiction to enter all appropriate orders concerning the same.

The court subsequently approved a qualified domestic relations order, which stated:

> 3.    IPERS is directed to pay benefits to [Catherine] as a marital property settlement under the following formula: 50% . . . of the gross monthly or lump-sum benefit payable at the date [John] begins receiving benefits, multiplied by the "service factor."  The numerator of the service factor is:
> - The number of quarters covered during the marriage period of August 9, 1997 through December 7, 2011.

- The denominator is [John's] total quarters of service covered by IPERS and used in calculating [his] benefit, not to exceed 140 quarters.

The order required John to "select IPERS' Option-6 in his application to retire." Counsel for both parties approved and signed the order.

IPERS accepted the QDRO and sent a letter informing the parties that the QDRO represented a final determination of IPERS benefits unless either party filed a written appeal within thirty days. The record contains no evidence of an appeal.

Months later, John filed an application to amend the QDRO, alleging Option 6 disregarded the formula ordered by the court in the dissolution decree. He sought to elect Option 2 instead. At a non-evidentiary hearing, John's attorney asked to change his selection to Option 5. No testimony was adduced about these options or the implications of each for the parties.

The district court denied the application. This appeal followed.

## II. Analysis

John does not argue the language in the dissolution decree concerning his IPERS accounts fails to comport with our law on the division of defined-benefit pension plans. *See In re Marriage of Sullins*, 715 N.W.2d 242, 248-50 (Iowa 2006); *In re Marriage of Benson*, 545 N.W.2d 252, 255-57 (Iowa 1996). He focuses on the QDRO language and contends it is inconsistent with the decree.[1]

---

[1] Catherine responds that the QDRO was a property settlement, which could not be amended. To the contrary, "the QDRO is not itself a property settlement, but is merely a method of effectuating the property division contained in a dissolution decree and may be modified later without affecting the finality of the underlying decree." *In re Marriage of Veit*, 797 N.W.2d 562, 564 (Iowa 2011).

In his view, the dissolution decree "clearly provides that the IPERS retirement account shall be split according to the formula based upon a service factor and a number of years of the marriage" and the paragraph providing for the selection of Option 6 "negates the service factor formula and grants to Catherine more benefits than she is entitled to under the Decree."

There are several problems with John's argument. First, John cannot be heard to complain about a provision he agreed to incorporate into the QDRO. *Cf. Kwentsky v. Sirovy*, 121 N.W. 27, 33-34 (Iowa 1909). Second, John was afforded the opportunity to appeal IPERS' approval of the QDRO and IPERS' incorporation of Option 6 if he believed the option was problematic. *See* Iowa Code § 97B.20A (2015) (setting forth appeal procedures for IPERS determinations). There is no evidence he did so. Third, John made no evidentiary record to support his assertion that Option 6 negated the service factor formula contained in the dissolution decree. *Cf. Langner v. Mull*, 453 N.W.2d 644, 649 (Iowa Ct. App. 1990) ("Melinda's absence was her own fault. She cannot now complain that the record was inadequate."). Finally, as John concedes, the QDRO refers to the *Benson* formula and directs IPERS to pay Catherine benefits pursuant to the formula. *See, e.g.*, *In re Marriage of Heath-Clark*, No. 15-0525, 2016 WL 2753779, at *8 (Iowa Ct. App. May 11, 2016) ("The plain language of the decree and qualified domestic relations order expresses the decretal court's intent to use the service percentage method for dividing [the] IPERS benefit. The decree and QDRO correctly sets forth the service percentage formula as expresse[d] in *Benson* . . . [which] is equitable under the

circumstances."). For these reasons, we affirm the district court's denial of John's application to amend the QDRO.

**AFFIRMED.**