**IN THE COURT OF APPEALS OF IOWA**

No. 20-1422
Filed April 28, 2021

**IN RE THE MARRIAGE OF JEFFERY MAU
AND ANN MARIE MAU**

**Upon the Petition of
JEFFERY MAU,**
        Petitioner-Appellant,

**And Concerning
ANN MARIE MAU,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Scott County, Patrick A. McElyea,

Judge.

        Jeffery Mau appeals from the district court's ruling on the entry of the

parties' qualified domestic relations order.  **REVERSED AND REMANDED.**

        Paul L. Macek of Hopkins & Huebner, P.C., Davenport, for appellant.

        Ryan M. Beckenbaugh of H.J. Dane Law Office, Davenport, for appellee.

        Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

This is an appeal from the denial of a motion to approve a qualified domestic relations order (QDRO).

The facts are essentially undisputed. Jeffery and Ann Marie Mau married in 2011 and divorced in 2020. The parties, both represented by counsel, stipulated to division of their assets. The relevant portion of the stipulation stated:

> **ASSETS**
> IT IS FURTHER STIPULATED AND AGREED the Petitioner, JEFFERY MAU, is awarded all right, title, and interest in the following assets: . . . the petitioner's Ameriprise Account. Provided that the Ameriprise qualified accounts (the retirement accounts) shall be divided as follows: $100,000 of the qualified accounts shall be rolled over into a 401k, IRA or other retirement account to be established or designated by the Respondent and shall be the property of the Respondent. $11,000.00 of the qualified accounts shall remain in the qualified account and shall be the property of the petitioner. In respect to this sum of $11,000.00, the Petitioner shall benefit by any increase in value of this sum or incur any reduction in value. The balance of the qualified accounts shall be divided between the parties pursuant to the *Benson* Formula, The Court reserves jurisdiction of the Ameriprise qualified accounts to enter any subsequent Orders that are necessary to do equity or implement this portion of the Decree.[1]

The parties further stipulated that the "agreement [did] justice between the parties and [was] an *equitable division of the parties' assets and liabilities* and [was] in the

---

[1] In *In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996), the court expressed the equation as follows:

$$\text{[Wife]'s share} = \frac{\text{\# of years [Husband] was both married and covered by the pension plan}}{\text{\# of years covered by plan prior to conclusion (maturity)}} \times 50\% \times \text{value of monthly pension benefit}$$

545 N.W.2d at 255.

best interest of the parties." (Emphasis added.) The district court filed a dissolution decree making "the terms and provisions" of the parties' "Stipulation and Agreement . . . a part of [the] Decree" and incorporating them and making them "enforceable as if same were set forth verbatim."

Following entry of the decree, Jeffrey sought the court's approval of a QDRO to divide the balance of the Ameriprise individual retirement account. His proposed QDRO provided:

> **FIRST AWARD:** The Custodian is directed to transfer directly into a separate account to be established by the Alternate Payee one hundred thousand dollars **($100,000)** from the value of the Account Holder's account as of the date of account segregation/transfer. The transfer shall be made as soon as practicable after this Order has been served upon the Custodian. The amount awarded to the Alternate Payee in this paragraph shall be transferred in cash after a proportionate share of the underlying investments are liquidated. Said transfer shall be made directly into a separate account for the Alternate Payee. The determination of the exact division and transfer of funds shall be made by the Custodian to the best of their ability.
>
> **SECOND AWARD:** After deducting Eleven Thousand Dollars ($11,000) from the remaining funds, after the "First Award", the Custodian is directed to transfer directly into a separate account to be established by the Alternate Payee **Fifty Percent** (50%) of the value of the Account Holder's account as of **February 14, 2020** multiplied by a fraction the numerator of which represents the years of marriage from November 11, 2011 to the parties date of divorce February 14, 2020 (8.27 yrs.) divided by the number of years the account existed. The amount awarded to the Alternate Payee in this paragraph shall be adjusted for any market value and/or investment gains or losses from February 14, 2020 to the date a separate (temporary) account is established on behalf of the Alternate Payee. Recognizing that the account balance consists of publicly registered securities and/or cash equivalents, said account and/or securities transferred shall be determined on a proportionate basis to the amount assigned to the Alternate Payee and the market value of each security, account or cash equivalent in the account as of the date of transfer directly into a separate account for the Alternate Payee. The determination of the exact division and transfer of funds shall be made by the Custodian to the best of their ability.

At a hearing on the application, the parties agreed the total amount in the account as of the dissolution date was $372,454. After subtraction of the $100,000 and $11,000, there remained a balance of $261,454 to be divided pursuant to the formula. Ann Marie's attorney explained that an equal division of the balance would afford each party an additional $130,727, whereas application of "the *Benson* formula [would leave] Ms. Mau with $78,436 instead of the 130." Jeffrey's attorney responded that "would reflect [his] understanding." He stated "the net impact if the second *Benson* application is made nets Ms. Mau about $53,000 less."[2]

The district court agreed with the parties that "the net effect of applying the *Benson* formula to the remaining portion of the Ameriprise account resulted in Jeff receiving roughly $53,000 more than Ann Marie does." The court then stated:

> This case presents a difficult situation for the Court. This Court believes strongly in the parties' ability to bargain and construct an agreement. The Court understands that there may be portions of an agreement that subjectively look unfair or inequitable, but for lack of a better term, "get the deal done." This situation is complicated further by the fact that counsel for both parties signed off on the stipulation assenting to the provisions in the agreement, and the Court approved the settlement on the record.
> The stipulation does grant the Court continuing jurisdiction to "enter any subsequent orders that are necessary to do equity or implement this portion of the Decree." This is the hook the Court is hanging its hat on to modify the terms of the parties' agreement. The Court finds application of the *Benson* formula results in a second offset for premarital contributions and creates an inequitable result.

---

[2] At the hearing, Jeffrey's attorney explained "[t]he retirement account existed for approximately 13 years and predated the marriage. So the . . . marital formula would be 9 over 13" and [t]hat then gets divided by half." In fact, the proposed QDRO for the Ameriprise account states the "years of marriage" during the life of the account was actually "8.27" years. To come up with the $53,000 difference between an equal division of the account balance and a *Benson* formula division of the account balance, we would have to presume the Ameriprise account existed for 13.78 years.

The Iowa Court of Appeals has affirmed the concept that a function of the *Benson* formula is to create an offset for premarital contributions. *See In re Marriage of Freudenberg*, 926 N.W.2d 569 (Iowa Ct. App. 2018) and *In re Marriage of Wattonville*, 817 N.W.2d 32 (Iowa Ct. App. 2012). These cases are persuasive authority for the proposition that the goal of the *Benson* formula is to account for premarital contributions.

The Court finds an equitable distribution would be each party receiving one-half of the remaining balance in the Ameriprise account.

Jeffrey appealed. Our review is de novo. *See In re Marriage of Veit*, 797 N.W.2d 562, 564 (Iowa 2011) (applying de novo review in determining whether QDRO fulfilled terms of dissolution decree); *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009) (reviewing de novo whether district court properly interpreted dissolution decree).

Preliminarily, Jeffrey argues the district court lacked authority to modify the property provisions of the dissolution decree. We find the district court had authority to enter a QDRO to effectuate the terms of the stipulation. *See Brown*, 776 N.W.2d at 648. There, the court began by noting, "[w]e have never decided whether a QDRO is a necessary part of the judgment of dissolution or if it should be regarded as supplemental to the divorce proceeding." *Brown*, 776 N.W.2d at 648. The court held a QDRO was "supplemental and not a part of the underlying decree." *Id.*; *see also Veit*, 797 N.W.2d at 564 (noting a party's abandonment of the identical argument in light of *Brown*); *In re Marriage of Heath-Clark*, No. 15-0525, 2016 WL 2753779, at *3 (Iowa Ct. App. May 11, 2016) ("Richard's request is not for modification of the property division. He is asking the QDRO be modified to conform to the property division as set forth in the decree."). Applying *Brown*, the district court possessed authority to enter the QDRO.

To the extent Jeffrey argues the district court incorrectly modified the property division of the decree, we agree. Jeffrey contends the stipulation incorporated into the dissolution decree provided that the balance would be divided by the *Benson* formula and the QDRO implemented that language. In his view, if the parties wanted an equal division of the balance, they could have said so and Ann Marie's argument to the contrary "is asking this Court to either ignore or delete two words in the decree, to-wit: *Benson* formula." Ann Marie responds that application of the *Benson* formula is inequitable because the stipulation "already separates the premarital portion of Jeffrey's Ameriprise account." She asserts that equity dictates an equal division of the balance.

The district court approved the stipulation, which plainly and unambiguously provided that "[t]he balance of the qualified accounts shall be divided between the parties pursuant to the *Benson* [f]ormula." *See In re Marriage of Jones*, 653 N.W.2d 589, 594 (Iowa 2002) ("[O]nce the court enters decree, the stipulation, as a practical matter, has no further effect."); *In re Marriage of Lawson*, 409 N.W.2d 181, 182 (Iowa 1987) ("When the stipulation is merged in the dissolution decree it is interpreted and enforced as a final judgment of the court, not as a separate contract between the parties." (quoting *Prochelo v. Prochelo*, 346 N.W.2d 527, 529 (Iowa 1984))). The QDRO implemented that language. *See Heath-Clark*, 2016 WL 2753779, at *4 ("[T]he inquiry is whether the decree and the QDRO implement the *Benson* formula or whether the QDRO must be modified to reflect the decretal court's intent."). "There is nothing inequitable in enforcing the bargained-for agreement." *Id.* at *7. We reverse the district court's ruling and remand with instructions to approve the proposed QDRO.

Ann Marie seeks appellate attorney fees of $2500. Because she was not the prevailing party, we deny her request. *See In re Marriage of Hoffman*, 891 N.W.2d 849, 852 (Iowa Ct. App. 2016).

**REVERSED AND REMANDED.**