# IN THE COURT OF APPEALS OF IOWA

No. 3-1113 / 13-0534
Filed February 19, 2014

**CINDY SUE HINCKLEY,**
Plaintiff-Appellant,

**vs.**

**JAMES ALLEN HINCKLEY,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Washington County, Myron L. Gookin, Judge.

A divorced spouse contends a qualified domestic relations order entitles her to an amount specified in the order and not an amount that accounts for investment losses. **AFFIRMED.**

Joseph W. Younker of Bradley & Riley, P.C., Iowa City, for appellant.

Leslie D. Lamping of Lamping, Schlegel & Salazar, L.L.P., Washington, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Potterfield, JJ.

**VAITHESWARAN, J.**

We must decide whether a qualified domestic relations order (QDRO) entitled a divorced spouse to the amount specified in the order or an amount that accounted for investment losses.

## I.    *Background Facts and Proceedings*

Cindy and James Hinckley dissolved their marriage.   The dissolution decree incorporated a stipulation under which Cindy was to receive $165,746 of Jim's retirement account, to be distributed pursuant to a QDRO.

The QDRO was executed two months after the dissolution decree was filed, and funds were transmitted to Cindy five months after the decree was filed. In the interim, the account value plummeted from $342,139.55 to $220,916.33. Cindy only received $103,981.25.

Cindy filed an application seeking a declaration of the parties' rights under the QDRO and an order requiring payment of an additional $61,844.75.   The district court concluded that the amount Cindy received "was proper and correct." Cindy appealed.

## II.    *Analysis*

Cindy contends the language governing this appeal appears in a section of the QDRO titled "amount of benefit to be paid to the alternate payee."[1]   That section states Cindy's interest in the plan will be "$165,746 of [Jim's] Account Balance as of October 3, 2008" (the date the dissolution decree was filed) and the interest will "be subject to earnings and losses subsequent to October 3,

---

[1] Cindy does not argue that the QDRO is inconsistent with the language of the dissolution decree.  *See In re Marriage of Brown*, 776 N.W.2d 644, 650 (Iowa 2009).

2008." The QDRO also states benefits will "be calculated on a <u>pro-rata basis</u> unless specifically indicated otherwise" and

> [i]f the total amount of $165,746 assigned to [Cindy] in the Order is not immediately available for distribution due to . . . investment losses, then [Cindy] shall receive 100% of [Jim's] account balance as of the date of distribution.

Cindy focuses on the term "distribution" in this final clause. She contends the district court misinterpreted the term.

We need not interpret "distribution" to determine whether Cindy is entitled to receive $165,746.00 or a lesser amount because the first part of the quoted section clearly answers the question. It states that, while Cindy's interest will be $165,746 "as of October 3, 2008," that interest "shall be subject to earnings and losses subsequent to October 3, 2008." Applying this sentence, Cindy's interest had to be reduced by the losses sustained after October 3, 2008.

The last sentence of the section does not alter our analysis. It addresses the possibility that "the total amount of" Cindy's interest "might not immediately [be] available for distribution" due to specified occurrences, including investment losses. That possibility did not become a reality. The total amount of Cindy's interest was $165,746.00—subject to earnings and losses—and Jim's account contained more than that balance on the date of the dissolution decree, the date of the QDRO, and the date Cindy received the funds. The last sentence was simply not applicable.

We conclude Cindy was entitled to $165,746 minus losses incurred after October 3, 2008. This was the amount Cindy received and the amount the district court confirmed in its declaratory ruling. We discern no error in the ruling.

**AFFIRMED.**