# IN THE COURT OF APPEALS OF IOWA

No. 14-2149
Filed September 23, 2015


IN RE THE MARRIAGE OF JERELYN RAE KIMM
AND JON H. KIMM

Upon the Petition of
JERELYN RAE KIMM,
     Petitioner-Appellant,

And Concerning
JON H. KIMM,
     Deceased.

_____


     Appeal from the Iowa District Court for Benton County, Fae Hoover-Grinde, Judge.


     Jerelyn Kimm appeals from an order entered in favor of the estate of Jon Kimm's application for judgment entry. **AFFIRMED.**


     Garrett A. Dozark of Bloethe, Elwood & Buchanan, Victor, for appellant.

     Jennifer L. Zahradnik of Kollmorgen, Schlue & Zahradnik, P.C., Belle Plaine, for appellee.


     Considered by Doyle, P.J., and Mullins and Bower, JJ.

**DOYLE, Presiding Judge.**

Less than a month after Jerelyn and Jon Kimm's marriage was dissolved, Jon died. The proceeds from the sale of the marital home were not sufficient to cover the mortgages and debts the parties had agreed would be paid from the sale proceeds. The dissolution decree, which incorporated the parties' property settlement agreement, provided the net proceeds from the sale of the house would be split equally between the parties but was silent as to how any shortfall would be handled. Jon's estate paid the debts and then filed an application seeking judgment against Jerelyn for one-half the shortfall. The district court found it reasonable to interpret the decree to require the parties to share equally the shortfall and entered judgment against Jerelyn in the amount of $35,101.84. Jerelyn appeals, arguing the district court's interpretation of the decree leads to unfair results. We affirm.

Jon and Jerelyn Kimm were married in 2002. Jerelyn filed a petition for dissolution of marriage in 2012. The parties' property settlement agreement was incorporated in the August 16, 2012 decree of dissolution of marriage. Pertinent to this appeal, paragraph five of the decree provided:

> The real estate known as the Cabin [the marital residence] shall be sold, the proceeds used first to pay off any mortgages that may be on the property, One-half of the loan from Kimm's Ready Mix, Inc. (total as of 8/13/2012 is $31,480.01) that was used to pay on the Belle Plaine House[1] and 2nd mortgage on the Cabin, the loan to Tom Hagen used to pay the delinquent amounts on the Cabin and Belle Plaine House, the amount owed at Marengo Farm & Home for the grass seed and lawn care items at the Cabin and the amount owed at Rabe Hardware for repairs to the Cabin. The remaining proceeds shall be split equally between the parties.

---

[1] Jerelyn was awarded the Belle Plaine house in the decree.

As to debts, the decree also provided:

> The Petitioner shall assume responsibility for and hold the Respondent harmless for all debt which is attached to property awarded to her. . . . The Respondent shall assume responsibility for and hold the Petitioner harmless for all debt which is attached to property awarded to him.

The decree also allocated certain debts to each party.

Jon died on September 8, 2012, and his estate was opened shortly thereafter. Jerelyn continued to reside in the Cabin until its sale. The Cabin was sold in September 2013, for $218,000—an amount less than expected. The sale netted $192,956.05. This amount was not sufficient to satisfy the debts as set forth in paragraph five of the decree ("paragraph five debts") and the following claims were made in Jon's estate:

> a. Tom Hagen – $6,900.00;
> b. Kimm's Ready Mix – $31,480.01;
> c. Marengo Farm & Home – $1762.10;
> d. Rabe Hardware – $968.06; and
> e. Benton County State Bank – $29,093.51.

These claims totaled $70,203.68 and were paid in full by the estate. The estate requested reimbursement from Jerelyn in the amount of $35,101.84—one-half of the paragraph five debts paid by the estate. Jerelyn declined.

The estate filed an application in the dissolution court for judgment entry seeking judgment against Jerelyn in the amount of $35,101.84, plus attorney fees and costs.[2] After a hearing, the district court interpreted the decree, concluding:

> Because the Decree provides for the parties to shall share equally proceeds from the sale of the Cabin after payment of the debts set

---

[2] The dissolution court retains authority to interpret and enforce its prior decree. *See In re Marriage of Morris*, 810 N.W.2d 880, 886 (Iowa 2012).

out in Paragraph 5 (of the Decree) the court finds it reasonable to interpret the Decree to require the parties to share the balance of the debts. The court therefore ORDERS that judgment shall enter in favor of the Estate of Jon Kimm and against Jerelyn Rae Kimm in the amount of $35,101.84.

Jerelyn now appeals.

Our review of an equitable action is de novo. Iowa R. App. P. 6.907. "We review the construction of a dissolution decree as a matter of law." *In re Marriage of Goodman*, 690 N.W.2d 279, 282 (Iowa 2004); *but see In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009) (reviewing de novo whether district court properly interpreted dissolution decree); *In re Marriage of Pals*, 714 N.W.2d 644, 646 (Iowa 2006) ("'A proceeding to modify or implement a marriage dissolution decree subsequent to its entry is triable in equity and reviewed de novo on appeal.'" (quoting *In re Marriage of Mullen-Funderburk*, 696 N.W.2d 607, 609 (Iowa 2005))). The parties agree our review is de novo.

In her brief, Jerelyn notes, "Jon received marital assets worth substantially more in value than the assets awarded to [her], even though [she] was awarded more debt than Jon." She argues the district court's interpretation of the decree requiring her to pay half of the paragraph five debts is an inequitable distribution of the parties' marital debts. Her argument is misplaced. Generally, a property division is not modifiable. *See* Iowa Code § 589.21(7) (2011). Inequitable property divisions in a dissolution decree should be corrected by an appeal. *See Brown*, 776 N.W.2d at 647. Jerelyn did not appeal the original dissolution decree, and indeed, she stipulated to its entry. Thus, while she has the right to argue that the district court's order misinterpreted that decree, she cannot argue

that the order leads to an inequitable property division (except to the extent she is simply urging that as a reason why the interpretation is incorrect).

The issue before us is whether the district court correctly construed the dissolution decree. "A dissolution decree is construed like any other written instrument." *Id.* at 650.

> The decree should be construed in accordance with its evident intention. Indeed the determinative factor is the intention of the court as gathered from all parts of the decree. Effect is to be given to that which is clearly implied as well as to that which is expressed. Of course, in determining this intent, we take the decree by its four corners and try to ascertain from it the intent as disclosed by the various provisions of the decree.

*Goodman*, 690 N.W.2d at 283 (quoting *In re Roberts' Estate*, 131 N.W.2d 458, 461 (Iowa 1964)). "In construing a dissolution decree, we give force and effect to every word, if possible, in order to give the decree a consistent, effective and reasonable meaning in its entirety." *Brown*, 776 N.W.2d at 650. Of course, when a document is unambiguous, intent is determined by the words of the document itself. *See Hofmeyer v. Iowa Dist. Ct.*, 640 N.W.2d 225, 228 (Iowa 2001).

The decree in question was a "consent decree" that incorporated the parties' property settlement agreement. When incorporated into the dissolution decree, the parties' stipulation became the court's language. *See In re Marriage of Sylvester*, 412 N.W.2d 624, 628 (Iowa 1987).

> Although a stipulation of settlement in a dissolution proceeding is a contract between the parties, it becomes a final contract when it is accepted and approved by the court. When the stipulation is merged in the dissolution decree it is interpreted and enforced as a final judgment of the court, not as a separate contract between the parties.

*In re Marriage of Lawson*, 409 N.W.2d 181, 182 (Iowa 1987). When interpreting the language of the decree, we look not to the intent of the parties when entering the stipulation; we look to the document as it expresses the intent of the court. *See Sylvester*, 412 N.W.2d at 628.

Here the decree is silent as to how the paragraph five debts would be shared in the event the Cabin's net sale proceeds were insufficient to cover those debts. Because the decree provides that Jon and Jerelyn share equally in the proceeds of the sale after payment the paragraph five debts, the district court concluded it was reasonable to interpret the decree to require the parties to share the balance of those debts. We agree.

It is the evident intention of the decree that both parties are obligated to share equally in the payment of the paragraph five debts. The decree ordered the Cabin, which was jointly owned by the parties, be sold. The decree specifically provides that it was only after those debts were satisfied that the parties would share equally in the remaining proceeds. Other provisions of the decree provide that each party is responsible for the debt attached to property awarded to that party. It logically follows that debts attached to a shared asset awarded equally to the parties, like the Cabin, be shared equally by the parties.

Although not expressed in the decree, we find it is clearly implied that the parties share, and share equally, the paragraph five debts in the event the Cabin's sales proceeds were insufficient to cover those debts. We find no language in the decree to the contrary. Consequently, we affirm the order of the district court.

**AFFIRMED.**