# IN THE COURT OF APPEALS OF IOWA

No. 19-0969
Filed January 21, 2021

IN RE THE MARRIAGE OF MATTHEW TAIT MILLER
AND KARRI ANN MILLER

Upon the Petition of
MATTHEW TAIT MILLER,
        Petitioner-Appellant/Cross-Appellee,

And Concerning
KARRI ANN MILLER,
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, George L.

Stigler, Judge.


        Matthew Miller appeals and Karri Miller cross appeals the district court's

property provisions of the dissolution decree. **AFFIRMED AS MODIFIED.**



        Heather A. Prendergast of Roberts, Stevens & Prendergast, PLLC,

Waterloo, for appellant.

        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellee.


        Heard by Bower, C.J., and Vaitheswaran and Greer, JJ.

**VAITHESWARAN, Judge.**

Matthew and Karri Ann Miller married in 2010 and divorced in 2018. On appeal and cross-appeal, both challenge the property provisions of the dissolution decree.

## I.    *Background Facts and Proceedings*

Matthew was forty-two years old at the time of trial. He joined the Army in 1993 and served in the Army National Guard, participating in four overseas tours of duty. Based on his service, he is eligible to receive $1395 per month from a National Guard retirement pension, beginning on December 28, 2034.

Matthew had a Bachelor's degree and later obtained a Master's degree. Between deployments, he worked at a credit union, accumulating funds in a 401(k) retirement account. Later, he joined the Waterloo Police Department. A disability ended his employment after approximately eight years and, effective September 1, 2015, Matthew began receiving gross monthly disability pension payments of $2651 from the Municipal Fire and Police Retirement System of Iowa.[1] Shortly before filing the dissolution petition, Matthew took a job with the University of Iowa. He rolled his 401(k) account into his current TIAA-CREF account and, for "a little over a year" preceding trial, made contributions to the TIAA account. Matthew also had a Roth IRA, which at one time had $8843. He cashed out the fund to pay for living expenses, depositing the balance of $4301.02 into a savings account.[2]

---

[1] Matthew also received a VA disability pension of $1365.48 per month. The district court declined to divide the VA pension. Karri does not challenge that aspect of the decree.

[2] Karri agrees the Roth IRA balance, found by the district court to be $8843, is incorrect, and the balance of IRA funds placed into a savings account was $4301.02.

Karri was thirty-seven at the time of trial. She had a Bachelor's degree and was employed by a community college, where she contributed to an IPERS retirement account. In conjunction with prior State employment, she accumulated a total of seven years of contributions by the time of trial. She could expect to receive a little over $5000 per month from the account if she maintained IPERS-connected employment for thirty-nine years, but she did not intend to remain that long. Kerri also had two "Voya" retirement accounts with funds totaling less than $3200.

The couple purchased a home financed by two commercial lenders and Karri's mother. At trial, the parties disputed whether Karri's mother was fully repaid for the funds she lent. They also disputed the appropriate disposition of Matthew's pensions and retirement accounts.

The district court declined to divide Karri's IPERS account, awarding her "the entirety" as well as "her two investment accounts, $20,000 of [Matthew's] TIAA account, the . . . Roth IRA distribution and all" financial accounts at a credit union, "with the exception of" one account containing $1525, which was awarded to Matthew. The court ordered Matthew's "police pension and National Guard retirement pension" to "be divided per the *Benson* formula." *See In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996) (approving a percentage method of allocating pension benefits pursuant to a formula that divided the number of years the paying spouse was both married and covered by the pension plan by the number of years covered by the plan prior to conclusion, and multiplying the number by fifty percent of the value of the monthly pension benefit); *see also In re Marriage of Brown*, 776 N.W.2d 644, 649 (Iowa 2009) (expressing a preference

for the percentage method). As for the couple's home, the court ordered it sold and stated, "The debts to [the commercial lenders] and Karri Ann Miller's mother shall be paid and any proceeds thereafter shall be divided one-half to [Matthew] and [Karri]."

On appeal, Matthew contends: the district court should not have awarded any portion of his municipal fire and police retirement system disability pension or his National Guard retirement pension to Karri; should not have granted her any portion of his TIAA-CREF retirement account; and should not have ordered Karri's mother to receive a portion of the home-sale proceeds. Karri cross-appeals, arguing the district court should have granted her a right to survivor benefits on Matthew's police disability and National Guard retirement pensions and should have awarded her a greater share of Matthew's TIAA-CREF retirement account.

## II.  Matthew's Police Disability and Military Retirement Pensions

### A.  Municipal Police and Fire Retirement Disability Pension

Unlike a retirement pension, "[a] disability payment . . . cannot be considered compensation for past services rendered." *In re Marriage of Howell*, 434 N.W.2d 629, 632–33 (Iowa 1989). "Rather, it is compensation to replace income that would have been earned had the employee not been injured." *In re Marriage of O'Connor*, 584 N.W.2d 575, 576 (Iowa Ct. App. June 24, 1998). A disability pension "is a marital asset subject to division in dissolution cases." *In re Marriage of DeNuys*, 543 N.W.2d 894, 897 (Iowa 1996).

Matthew argues his municipal disability pension should not have been divided because the marriage "was of an incredibly short duration" and Karri was young and in good health, was "gainfully employed in a fulltime capacity with two

bachelor's degrees;[3] and [h]er earning capacity [was] only limited by her desire to work."

Matthew's calculation of the duration of the marriage is based on Karri's apparent second thoughts eight months after the couple wed. He cites no authority for the proposition that disagreements or disillusionment may mark the termination date of a marriage for property division purposes. In fact, the supreme court has measured the duration from the date of marriage to the date of trial. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 99, 104 (Iowa 2007); *In re Marriage of Hansen*, No. 17-0889, 2018 WL 4922992, at *18 n.13 (Iowa Ct. App. Oct. 10, 2018) (Mullins, J., concurring in part and dissenting in part) (noting "length is measured by date of marriage to date of trial, as the supreme court did in *Fennelly*"). Applying *Fennelly*, we determine the marriage lasted eight years. We turn to the remaining factors cited by Matthew.

Although Karri was young, relatively healthy,[4] had a post-high school education, and was gainfully employed, her earnings amounted to less than half of Matthew's annual income. Matthew expected to continue working at the University or a similar type of institution and planned to increase the funds in his TIAA-CREF account. On our de novo review, we are persuaded that Matthew's earnings and earning capacity support the district court's decision to divide the police disability pension. In addition, Karri was married to Matthew for five of the

---

[3] Matthew appears to argue that Karri's double major translates into two Bachelor's degrees.

[4] Karri testified she was recovering from a cervical laminectomy and there could be "some limitations" on "recreational activities" such as the use of barbells. She also testified to having "weak ankles," requiring the use of "compression ankle supports."

eight years that he was a police officer, a factor favoring division of the disability pension.

*In re Marriage of O'Connor*, 584 N.W.2d 575 (Iowa Ct. App. 1998), cited by Matthew for a contrary conclusion, is inapposite. There, a couple was married thirteen of the fifteen years that the husband worked for a police department. *O'Connor*, 584 N.W.2d at 576. The court declined to allocate any portion of the husband's disability pension until the husband turned fifty-five, "at which time [the non-pensioner spouse] shall receive thirteen-fifteenths of one-half." *Id.* at 577. We believe the disposition in *O'Connor* turned on the pensioner spouse's limited earnings and earning capacity relative to the non-pensioner spouse. *Id.* ("Michael's disability has decreased his earnings. While he has an earning limitation of $35,611.32, there is no showing he will be able to earn additional income."). Matthew's earnings were not similarly constrained.

On our de novo review, we conclude the district court acted equitably in dividing Matthew's police disability pension. Because the pension amount was known, Karri's share of the pension could be readily calculated pursuant to the *Benson* formula, as follows: 5/8 [years of police service while married to Karri divided by the total years of police service] x (.50 x $2651) [fifty percent of the gross pension benefit]. Karri's gross monthly entitlement under the disability pension is $828.44. *See Howell*, 434 N.W.2d at 633. We affirm the district court's division of Matthew's disability pension.

We turn to Karri's assertion on cross-appeal that she has "a right to survivor benefits of . . . Matt[hew]'s Municipal Fire and Police Retirement System Disability Pension." The dissolution decree did not speak to survivor benefits. Karri moved

to enlarge the decree to "specify that any Order entered should award her the survivor benefits." The district court denied Karri's motion, preserving the issue for appeal. *Cf. In re Marriage of Morris*, 810 N.W.2d 880, 887 (Iowa 2012) (remanding "to determine the court's intent as to survivor benefits" for a Marine Corps retirement pension because the decree was ambiguous and there was no trial, evidentiary hearing, or extrinsic evidence to interpret the decree).

Iowa Code chapter 411 (2017), governing the retirement system for police officers and fire fighters, states a "surviving spouse" includes "a former spouse only if the division of assets in the dissolution of marriage decree pursuant to section 598.17 grants the former spouse rights of a spouse under this chapter." Iowa Code § 411.1(22); *see also In re Marriage of Duggan*, 659 N.W.2d 556, 560 (Iowa 2003) (discussing pensions under chapter 411). We look to "the facts of each case and whether the allowance of survivorship rights effectuates an equitable distribution of the parties' assets." *Duggan*, 659 N.W.2d at 560.

On our de novo review, we are not persuaded that the length of the marriage warranted an award of survivor benefits. *Cf. id.* at 560 (modifying dissolution decree to afford a spouse survivorship rights following a more than thirty-five year marriage); *In re Marriage of Dow*, No. 17-0534, 2018 WL 1858299, at *7 (Iowa Ct. App. Apr. 18, 2018) (awarding survivor benefits based on the twenty-seven year marriage and the non-pensioner's need for retirement funds); *In re Marriage of Smith*, No.16-0597, 2017 WL 362000, at *6 n.11 (Iowa Ct. App. Jan. 25, 2017) (denying a non-pensioner's request to be designated as a surviving spouse after noting "the *Benson* court stated the percentage formula 'properly allocates the risk

between the parties'"). We decline to modify the dissolution decree to afford Karri survivor rights in Matthew's police disability pension.

### B. Matthew's National Guard Retirement Pension

Matthew contends the district court should not have awarded a portion of his National Guard retirement pension to Karri. In his view, "the benefits which he will receive upon his retirement in 2034 are retirement benefits to compensate him for his service in the military." He notes that sixteen "years of military service . . . occurred prior to the start of the marriage and the parties were only married during [his] last deployment." He also reiterates that this was a short marriage and they were not "equal participants in the joint venture."

The district court addressed the length of Matthew's service and the duration of the marriage as follows:

> Matthew's National Guard pension should be divided per the *Benson* formula as well. The majority of Matthew Tait's military pension came from active duty training, IDT, annual 15-day yearly training cycles, and deployment points for overseas service. Only those points earned by Matthew after the April 2010 wedding until his retirement in 2015 shall be considered in the *Benson* formula distribution.
> Since April 2010, the date of the marriage, Matthew has accumulated 929 points for retirement pay. He has a total of 3,522 retirement points. Fifty percent of 929/3522 is 13.1%, which is Karri[ ]'s share of Matthew's military pension.

In a post-trial ruling, the court ordered Matthew to pay the sum personally rather than through a qualified domestic relations order.

On our de novo review, we agree with the district court's decision to award Karri a portion of the expected National Guard retirement pension of $1395 per month. *See Howell*, 434 N.W.2d at 632 (stating military pensions, like private pensions, are considered marital property and can be subject to division in

dissolution proceedings). Although the marriage was not as long as some in which we have affirmed a division, the district court limited Karri's award to points earned after the marriage. *Cf. In re Marriage of Fuchser*, 477 N.W.2d 864, 866 (Iowa Ct. App. Sept. 24, 1991) (awarding a percentage of retirement benefits following a sixteen-year marriage); *In re Marriage of Monahan*, No. 17-0904, 2018 WL 4635689, at *2 (Iowa Ct. App. Sep. 26, 2018) (modifying dissolution decree to classify military pension as marital property and awarding one-half to non-pensioner spouse following a thirty-year marriage); *In re Marriage of Ronfeldt*, No. 11-1248, 2012 WL 836865, at *3 (Iowa Ct. App. Mar. 14, 2012) (dividing military retirement pension pursuant to the *Benson* formula following a twenty-two year marriage). We affirm the award.

On cross-appeal, Karri argues "the district court erred by failing to grant [her] a right to survivor benefits of . . . Matt[hew]'s National Guard retirement pension." The issue was discussed at trial and included in a post-trial motion. The district court denied that portion of the motion, preserving the issue for review. *Cf. Morris*, 810 N.W.2d at 887.

On our de novo review, we are persuaded that the same facts militating against an award of survivor benefits in connection with the police disability pension support the court's denial of an award here. We affirm the district court's refusal to award survivor benefits on Matthew's National Guard retirement pension.

## III. *Matthew's TIAA-CREF Retirement Account*

As noted, the district court awarded Karri $20,000 of Matthew's TIAA-CREF retirement account. The court reasoned:

Matthew has a TIAA account of a value of $166,000. At the time of the marriage the account was approximately $80,000. During the marriage the parties made zero contributions to that asset. The growth in Matthew Tait's TIAA retirement account is due to market fluctuations and growth over the years since the April 2010 marriage. The $80,000 in the account at the time of the marriage is indisputably premarital property. Although Iowa law does not credit to a party or set aside to that party assets he or she brought into the marriage, such is a factor that may be considered under 598.21(5). The marriage length significantly affects the division of premarital property. If a marriage lasts only a short time, the claim of either party to property owned by the other prior to the marriage is minimal at best.

Because of the significant difference in assets awarded to each of these parties, the court will award $20,000 of the $86,000 increase in the TIAA account to Karri Ann. The balance will be awarded to Matthew.

Matthew reprises his contention that any award to Karri from this account was inequitable because the marriage "was over shortly after it began." To repeat, we are unpersuaded by this argument. *See Fennelly* 737 N.W.2d at 104 ("Spouses agree to accept one another 'for better or worse.'"). The key question is whether the eight-year marriage justified an award of a portion of the appreciated value of the TIAA-CREF account. *See In re Marriage of Hansen*, 886 N.W.2d 868, 873 (Iowa Ct. App. 2016) ("[A]ppreciation in the value of assets during the marriage is a marital asset.").

In *Hansen*, the court of appeals noted that a pension account "increased in value during the marriage by a significant sum, over $29,000." *Id.* at 872. The court concluded "it was equitable to divide the pension account via the *Benson* formula." *Id.* Notably, the marriage in *Hansen* lasted only four years. *Id.* at 870, 873. Here, the district court awarded Karri less than twenty-five percent of the appreciation in the TIAA-CREF account following an eight-year marriage.

We have considered Matthew's argument that the award was unnecessary to equalize the property distribution. Without burdening the opinion with our calculations, we are persuaded Karri received fewer assets than Matthew. *See id.* at 873 ("In light of the facts of this case, we need not align each party's assets and debts in a balance sheet to determine an equalization payment."). We agree with the district court's decision to award Kerri a relatively small portion of the appreciation. *See Fennelly*, 737 N.W.2d at 102 (noting an equal division is not required); *In re Marriage of Amling*, No. 13-1779, 2014 WL 4230222, at *5 (Iowa Ct. App. Aug. 27, 2014) (granting husband a portion of the appreciation in wife's investment account following a seven-year marriage).

On cross-appeal, Karri argues "to make the division more equitable, [she] deserved to receive substantially more than $20,000 from the TIAA-CREF account." We are not persuaded by the argument.

"An additional factor in dividing appreciated property acquired before the marriage is whether the appreciation which occurred during the marriage was fortuitous or due to the efforts of the parties." *In re Marriage of Hass*, 538 N.W.2d 889, 893 (Iowa Ct. App. 1995). A division may be limited "where the marriage was of short duration." *Id.*

The eight-year marriage could not be characterized as long, the appreciation in the account was fortuitous, and the district court awarded Karri half of Matthew's premarital Roth IRA, discussed below, as well as an income stream in the form of a portion of Matthew's disability pension. These factors support the district court's decision to limit Karri's award of the appreciation in the TIAA-CREF account to $20,000.

## IV. Matthew's Roth IRA

As noted, the parties agree that Matthew withdrew $8843.10 from a premarital Roth IRA and the balance of $4301.02 was placed in a savings account. The district court concluded that given "the substantial imbalance in assets awarded to each party, Karri . . . will be awarded . . . the . . . Roth IRA." Matthew contends "the Roth IRA accumulated exclusively and prior to the marriage should not be an asset subject to division." He cites "the very short length of the marriage, the lack of contribution by Karri to the marriage, and [the court's] failure to attribute the proper number to the same."

"The trial court may place different degrees of weight on the premarital status of property, but it may not separate the asset from the divisible estate and automatically award it to the spouse that owned the property prior to the marriage." In re Marriage of Sullins, 715 N.W.2d 242, 247 (Iowa 2006); see also Hansen, 886 N.W.2d at 872 ("The district court should not separate a premarital asset from the divisible estate and automatically award it to the spouse who owned it prior to the marriage.").

The district court balanced the equities in concluding Karri should receive the remainder of the funds drawn from the Roth IRA account. Although the account statements do not indicate the nature of the activity between 2011 and 2017 when Matthew withdrew the funds and there is scant if any dispute that the funds in the account were premarital, the marriage lasted eight years and the asset division skewed in favor of Matthew. For those reasons, we affirm the award of the balance of the funds to Karri. Because the parties agree the decree refers to $8843.10 and

that amount was depleted, leaving only $4301.02, we modify the decree to clarify that Kari is entitled to $4301.02, representing the balance of the Roth IRA funds.

## V.    *Loan to Karri's Mother*

Karri's mother lent the couple $6500 in closing costs, $2000 in earnest money, and $3243 in taxes to purchase their home, for a total of $11,742.  As noted at the outset, the district court ruled, "The debts to [the two commercial lenders] and Karri[ ]'s mother shall be paid and any proceeds thereafter shall be divided one-half to the petitioner and one-half to the respondent."

On appeal, Matthew contends:

> Karri's mother was more than paid for the closing costs, earnest money and taxes while the parties were sharing expenses post-separation.  It was inequitable and in essence a windfall to Karri's mother for her to receive payment on the loans twice and furthermore, there is no documentary proof that said loans were legitimate or enforced by Karri's mother.[5]

Karri responds that because  the district court did not assign the debt to either party but ordered it paid from the proceeds of the home sale, there was "no harm or inequity" to Matthew.

"[A] several-step analysis must be used to determine equitable distribution of funds received from parents."  *In re Marriage of Vrban*, 359 N.W.2d 420, 427 (Iowa 1984).  "First, the court must determine whether the parties intended that the moneys furnished be repaid.  To the extent the funds provided by the parents constituted loans, they must be repaid; if not, they became marital assets subject

---

[5] Matthew's assertion that "there is no documentary proof that said loans were legitimate or enforced by Karri's mother" contradicts his trial testimony, where he agreed the couple borrowed the funds from her.

to equitable distribution in the decree." *Id.* "The court must also determine if funds constituting a gift were given to one party only or to both parties." *Id.*

Karri's mother did not testify. Matthew testified that she was repaid from joint marital funds. However, the exhibit he cited does not allow us to reach that conclusion. Indeed, when questioned by the court, Matthew conceded he did not know the exact amount of repaid funds that came from a joint account. And he stated he "would be willing to contribute some of that money back to [Karri's] mother from the net proceeds of the home." In light of his concession and his acknowledgment that he could not document repayment of half the loan proceeds, we conclude the district court acted equitably in ordering Karri's mother to be repaid from the home sale proceeds.

## VI.    *Conclusion*

We affirm all aspects of the dissolution decree except that we modify the amount of Matthew's Roth IRA to be awarded to Karri. That amount is $4301.02.

**AFFIRMED AS MODIFIED.**