# IN THE COURT OF APPEALS OF IOWA

No. 23-0732
Filed July 3, 2024

IN RE THE MARRIAGE OF HOLLY LYNN TRULSON
AND TIMOTHY TODD TRULSON

Upon the Petition of
HOLLY LYNN TRULSON,
       Petitioner-Appellee,

And Concerning
TIMOTHY TODD TRULSON,
       Respondent-Appellant.

_____

       Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.


       Timothy Trulson appeals the property division in the decree dissolving the

parties' marriage. **AFFIRMED AS MODIFIED AND REMANDED WITH**

**INSTRUCTIONS.**


       Katherine S. Sargent, Des Moines, for appellant.

       Jamie J. Maguire of Flanagan Law Group, PLLC, Des Moines, for appellee.


       Considered by Schumacher, P.J., and Ahlers and Langholz, JJ.

**AHLERS, Judge.**

At the time of the dissolution of their marriage, Holly Trulson and Timothy Trulson had been married for twenty-eight years. The fighting issue in their dissolution-of-marriage action was how to equitably divide their property. *See* Iowa Code § 598.21(1) (2021) (requiring the court in a dissolution-of-marriage action to divide the property of the parties). Unable to resolve their dispute over property division, the parties had a trial and the district court divided the property in its decree dissolving the marriage. Timothy appeals, claiming the division of property was not equitable. More specifically, the appeal focuses primarily on the parties' retirement accounts and benefits.

As to the nature and value of the parties' retirement accounts and benefits, at the time of dissolution, Holly had an individual retirement account (IRA) valued at $137,000. Timothy had a Roth IRA, which the parties agreed to value at $115,906.[1] In addition to her IRA, Holly had accumulated retirement benefits through her work. As a public-school teacher since before she married Timothy, Holly has been paying into the Iowa Public Employee's Retirement System (IPERS). In its decree dividing the marital property, the district court valued Holly's IPERS account at $219,684 based on the refund value stated on a recent annual statement.

As to the division of the parties' retirement accounts and benefits, the district awarded Holly her IPERS account and Timothy both his Roth IRA and Holly's IRA.

---

[1] Timothy withdrew money from his Roth IRA while this dissolution action was pending, reducing the value of the account. He agreed that for purposes of valuing and dividing the marital property, his Roth IRA should be valued at its balance prior to his withdrawals.

After dividing up the rest of the marital property, the court ordered Holly to pay Timothy a property equalization payment of $54,949. As the other terms of the property division are not at issue, we do not detail them.

After the court filed its decree dividing the parties' property, Timothy filed an Iowa Rule of Civil Procedure 1.904(2) motion asking the court to modify its ruling. He argued that the court did not properly value Holly's IPERS account and it should be divided using the *Benson* formula; both parties should retain their respective IRAs; and the resulting division should result in Holly paying him a larger equalization payment. The court held a hearing on the motion during which the court explained it did not believe an equal division of property was necessary in this case given Timothy's past poor financial practices. The court ultimately denied Timothy's motion. Timothy appeals, again raising the arguments from his 1.904(2) motion. Holly asks us to affirm the district court's ruling and seeks appellate attorney fees.

We review dissolution-of-marriage actions de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Accordingly, we examine the entire record and adjudicate anew the issue of the property distribution." *Id.* We are not bound by the district court's findings, but we will only disturb its ruling if we find it failed to do equity. *Id.* Additionally, we will affirm the court's valuation of assets if it is within the range of permissible evidence. *Id.* at 679.

## I. Valuation and Division of IPERS Benefits

In a dissolution action, the court is tasked with equitably dividing the parties' property. Iowa Code § 598.21(5). Determining an equitable division necessarily involves placing a value on the property to be divided. Retirement accounts and

benefits are divisible marital property. *In re Marriage of Sullins*, 715 N.W.2d 242, 248 (Iowa 2006). As such, they need to be valued.

In this case, the sticking point is valuing Holly's IPERS benefits. There are two types of pension plans—defined-benefit plans and defined-contribution plans. *In re Marriage of Benson*, 545 N.W.2d 252, 254 (Iowa 1996). The difference between the two is that under a defined-benefit plan the future benefit is specified in advance based on a formula or schedule whereas under a defined-contribution plan the contributions are specified without a predetermined benefit. *Id.* Both types of plans can be factored into the property division by using the present-value method (i.e., taking a stream of future payments or a lump sum amount and discounting it to "current dollars" to reach its present value) or the percentage method (i.e., awarding the parties a specified percentage of the pension payable in the future at the time the benefits are paid). *Sullins*, 715 N.W.2d at 248–49. However, valuing a defined-benefit plan using the present-value method "is a complicated process that requires actuarial science." *Id.* at 248. Because of the complexity of trying to discount a defined-benefit plan to present value, the "normally desirable" and "more attractive" method for dividing such benefits is the percentage method. *Id.* at 248–49; *see also In re Marriage of Brown*, 776 N.W.2d 644, 649 ("Although both methods may be used to divide a defined-benefit plan, we have expressed a preference for the percentage method.").

IPERS is a defined-benefit plan. *Sullins*, 715 N.W.2d at 249. So, while it is possible to value the plan using the present-value method, doing so would require actuarial-science evidence. *Id.* at 248. But neither party presented actuarial-science evidence to establish the present value of Holly's IPERS benefits. Instead,

the court accepted the "refund value" provided in an annual summary statement as the value of the benefits. The statement explained that the refund value consists of Holly's "own contributions plus interest and . . . a portion of [her] employer's contributions plus interest." It clarified that the "refund value does not reflect the value of [Holly's] potential future lifetime monthly benefits."

Besides the fact the statement itself acknowledges the refund amount does not reflect the value of the benefits, our supreme court has also rejected this method of valuing an IPERS plan. *Brown*, 776 N.W.2d at 651 (finding it impermissible to value IPERS benefits based on contribution information on a statement because "[t]his figure does not accurately value the present worth of the benefits"). That is because future IPERS benefits are not based on contributions; instead, they are based on a percentage of the employee's average wages. *Id.* Because the refund value of Holly's IPERS benefits does not accurately reflect their present value, the district court did not accurately value Holly's IPERS benefits when it valued the account at the refund value. It simply could not determine the present value without the necessary actuarial evidence, which neither party provided.

As there was no actuarial evidence to find the present value of Holly's IPERS account, we find it appropriate to use the other accepted valuation and division method—the percentage method, also known as the *Benson* formula. *See Sullins*, 715 N.W.2d at 248; *see also In re Marriage of Miller*, 966 N.W.2d 630, 634 n.2 (Iowa 2021) (defining the *Benson* formula and explaining it originated in *Benson*, 545 N.W.2d at 254–55); *In re Marriage of Ocean*, No. 22-1664, 2024 WL 697757, at *5 (Iowa Ct. App. Feb. 21, 2024) (Ahlers, J., concurring in part and

dissenting in part) ("The only fair way to value the IPERS benefits, in the absence of any actuarial-based evidence of their value, is to divide them using the *Benson* formula."). Under this method, "the non-pensioner spouse is awarded a percentage (frequently fifty percent) of a fraction of the pensioner's benefits (based on the duration of the marriage), by a qualified domestic relations order (QDRO), which is paid if and when the benefits mature." *Sullins*, 715 N.W.2d at 250. "The fraction represents the portion of the pension attributable to the parties' joint marital efforts. The numerator in the fraction is the number of years the pensioner accrued benefits under the plan during the marriage, and the denominator is the total number of years of benefit accrual." *Id.* (internal citation omitted).

To effectuate the percentage method of dividing Holly's IPERS account, we modify the parties' dissolution decree to provide for a QDRO that awards Timothy a portion of Holly's IPERS benefits that is equal to fifty percent of Holly's IPERS monthly benefits multiplied by a fraction of which the numerator is the number of years Holly was both married to Timothy and covered by IPERS and the denominator is the total number of years Holly is covered by IPERS.[2]

Timothy points out that Holly can influence her IPERS benefits depending on what options she chooses both in choosing her retirement plan and in dividing the IPERS benefits via QDRO. Timothy asks that the QDRO include directives limiting Holly's decision making with respect to her IPERS account.[3] We do not

---

[2] If the IPERS plan administrator uses a different unit of measure than years to determine Holly's term of coverage under IPERS, then the QDRO shall use that alternative unit of measure.

[3] For example, Timothy asks that Holly be required to "designate [him] to receive a 100% joint and survivor annuity" upon her retirement."

have adequate information in our record to make such directives. Instead, we remand the case with the direction that the parties cooperate in preparing a QDRO acceptable to the plan administrator that includes deciding which of the various options available are fair to the parties. If the parties cannot agree on the terms of the QDRO or its options, either party may seek court intervention. The district court will then determine, with or without a hearing as the court deems appropriate, the terms of the QDRO and its options. The terms should be fair to both parties by equally dividing the marital portion of Holly's IPERS benefits.

As Timothy recognizes and requests, the division of Holly's IPERS benefits requires us to modify other aspects of the property distribution to ensure it remains equitable. Accordingly, we conclude each party should be awarded the party's own IRA rather than awarding both to Timothy. So although Holly's IPERS benefits will be shared with Timothy as described, we modify the decree to award Holly her IRA valued at $137,000.

With the above modifications put into effect, we provide a snapshot of the parties' resulting financial picture with the following recapitulation statement:

| Item # | Description of Asset/Debt | Holly | Timothy |
|---|---|---|---|
| 1 | House | $283,100 | |
| 2 | IPERS | Divided | Divided |
| 3 | IRA (Holly) | $137,000 | |
| 4 | Roth IRA (Timothy) | | $115,906 |
| 5 | IRA (previously cashed) | | $33,134 |
| 6 | Disability ins. (previously cashed) | | $7,236 |
| 7 | Nissan X-Terra | | $11,610 |
| 8 | Honda Del Sol | | $3,000 |
| 9 | 2002 Mustang | Gift | |
| 10 | 2005 Lexus | Gift | |
| 11 | Premarital property (excluded) | ($55,000) | |
| 12 | Gift—payment on house (excluded) | ($30,000) | |

| 13 | Other property & debts | Equal | Equal |
|----|------------------------|-------|-------|

| 14 | Total Before Equalization Payment | $335,100 | $170,886 |
|----|-----------------------------------|----------|----------|
| 15 | Equalization Payment by Holly | ($82,107) | $82,107 |
| 16 | Resulting Total | $252,993 | $252,993 |

We provide these explanatory notes about the statement:

Item #2: Although the lack of actuarial evidence in the records prevents us from placing a value on Holly's IPERS benefits, by dividing those benefits using the *Benson* formula as directed in this opinion, the IPERS benefits accrued during the marriage are equally divided regardless of their value.

Item #3: As previously noted, although the district court awarded Holly's IRA to Timothy, because we have modified the decree to divide the IPERS benefits, we find it appropriate to award Holly her IRA valued at $137,000.

Items #5 & #6: Many years before the parties separated, Timothy cashed in an IRA with a value of $33,134 and a disability insurance policy with a value of $7236. The district court found Timothy dissipated the assets and included their values as assets received by Timothy. We express no opinion on the propriety of the district court applying the dissipation doctrine, *see In re Marriage of Kimbro*, 826 N.W.2d 696, 700–01 (Iowa 2013) (permitting the court to include dissipated assets in the marital estate when assets are disposed of during the period of separation), to events occurring many years before the parties separated. As neither party challenges the district court's ruling on the treatment of those items, we include the value of these no-longer-existing assets on Timothy's side of the ledger.

Items #9 & #10:  The parties agree that the two vehicles listed were given to Holly as gifts from Holly's father.  The district court determined the values of these vehicles should not be included in assessing the division of the marital property, and neither party challenges that decision on appeal.  As a result, we also exclude the value of these vehicles from consideration.

Items #11 & #12:  The district court determined that Holly used $55,000 of funds she accumulated before the marriage to invest in the parties' first house and that such funds account for a like amount of equity in the current house awarded to Holly (Item #1).  The district court excluded that $55,000 from division, which is reflected on the above statement as a deduction on Holly's side of the ledger.  Likewise, the district court excluded an additional $30,000 that Holly received as a gift from her father toward the purchase of the house.  We note that premarital property and gifted property are not treated the same under the Iowa Code.  Premarital property may be included in the divisible estate.  *McDermott*, 827 N.W.2d at 678.  Property received via gift, on the other hand, is generally excluded from division unless equity demands otherwise.  *Id.*  We express no opinion on the propriety of the district court setting aside as Holly's separate property both her premarital funds and funds received as a gift, as neither party raises any objection to the district court's actions.  So, like the district court, we treat these two items as Holly's separate property, the value of which should be deducted from Holly's side of the ledger.

Item #13:  The parties presented little to no evidence of the value of any other assets or debts.  This suggests that the parties generally agree that the other assets and debts have been divided to their satisfaction and are generally equal in

value. Consistent with this suggestion is that both parties submitted as exhibits a proposed property distribution scheme. Neither party's proposed-distribution exhibit included any significant details about any other assets or debts. So, we treat the district court's division of all other assets and debts not shown in the above recapitulation statement as being equal to both parties.

As the above recapitulation statement shows, Holly comes out with $164,214 more marital net worth than Timothy, so some balancing is needed to achieve equity. While we do not always require mathematical equality in achieving the equitable division of property required by the Iowa Code, we generally start with the premise that equal is fair. *Kimbro*, 826 N.W.2d at 703–04.

Here, we see no persuasive reason why an equitable division of property should not be equal, especially when Holly has already received the substantial benefit of having $55,000 of potentially divisible premarital property set aside as her separate property not subject to division as well as having Timothy treated as if long-gone assets still exist and were awarded to him. Finding equality to be fair here, we modify the decree to replace the $54,949 property settlement obligation set by the district court with the obligation for Holly to pay Timothy a property settlement payment of $82,107, effectively equalizing the parties' net worths. The district court determined that 120 days is an appropriate period within which to require Holly to make the property settlement payment, and we do the same. Holly shall pay Timothy the $82,107 property settlement payment within 120 days of issuance of procedendo.

In summary, we modify the district court's decree to award Holly's IRA to her instead of Timothy. We also modify to require division of Holly's IPERS benefits

pursuant to the *Benson* formula, as detailed earlier in the opinion, including remanding the case to give the parties (or the court, upon inability of the parties to reach an agreement) an opportunity to determine the details of the QDRO to effectuate the goal of equal division of the marital portion of the IPERS benefits. Finally, we modify the decree to change Holly's property settlement-payment obligation to Timothy from $54,949 to $82,107. All other terms of the district court's decree not modified in this opinion shall remain unchanged.

## II.     Appellate Attorney Fees

Finally, we address Holly's request for $5000 in appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *McDermott*, 827 N.W.2d at 687 (citation omitted). When considering an appellate-attorney-fee request, we consider the needs of the requesting party, the other's ability to pay, and the merits of the claims. *Id.* Here, because Timothy was successful in his appeal to modify the property division, the parties have comparable earning capacity, and the parties have received equal amounts of the marital net worth, we decline to award Holly appellate attorney fees. Costs of appeal are assessed to Holly.

**AFFIRMED AS MODIFIED AND REMANDED WITH INSTRUCTIONS.**