# IN THE COURT OF APPEALS OF IOWA

No. 20-0624
Filed January 12, 2022

**IN RE THE MARRIAGE OF ANGELA DOSS
AND DUANE HUFFER**

**Upon the Petition of
ANGELA DOSS,**
　　　Petitioner-Appellee,

**And Concerning
DUANE HUFFER,**
　　　Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, David Porter (temporary matters and motion to withdraw first counsel), Jeanie Vaudt (motion to compel depositions), Scott D. Rosenberg (motion to withdraw third counsel), and Coleman McAllister (trial), Judges.

Duane Huffer appeals following the entry of a decree dissolving his marriage to Angela Doss. **AFFIRMED AS MODIFIED.**

Duane Huffer, Ames, self-represented appellant.

Katie M. Naset of Hope Law Firm & Associates, P.C., West Des Moines, for appellee.

Considered by Bower, C.J., and Mullins and Ahlers, JJ. Greer, J., takes no part.

**MULLINS, Presiding Judge.**

Duane Huffer appeals following the entry of a decree dissolving his marriage to Angela Doss. He argues (1) the district court erred in allowing his first attorney to withdraw without notice to him or a hearing and allowing the attorney to disclose privileged attorney-client information; (2) the court erred in not allowing additional discovery and a deposition of Angela; (3) the court erred in finding Angela more credible, given her alleged dishonesty about domestic abuse in the past; (4) the court misvalued property; (5) the court's distribution of assets was inequitable; (6) he should have been awarded temporary and permanent spousal support; (7) he should have been awarded temporary attorney fees and Angela should not have been awarded trial attorney fees; (8) the court erred in concluding his third attorney was ethical in withdrawing based on his refusal to follow his direction "to challenge [Angela's] lies about domestic violence"; and (9) the court shirked its duty of impartiality. Angela requests an award of appellate attorney fees.

## I.      Background Facts and Proceedings

The parties met in 2007 and married in 2010. The marriage produced no children. Before the marriage, the parties entered a premarital agreement, which provided each would be distributed specific items of "separate property" acquired before the marriage. At the time of the marriage, each party owned a home, both of which were listed as separate property in the agreement. Duane valued his home, which he purchased in 2007, at $232,875, but it was encumbered by a mortgage in the amount of $149,560. After the marriage, Angela sold her home

and put the entirety of the proceeds toward paying off the mortgage on Duane's home, and she was added to the title of the property.

Angela was forty-one years old at the time of trial. She previously resided in Iowa but moved to Arizona in May 2019, while this proceeding was pending. Before the marriage, she obtained both a bachelor's degree and a law degree. She is employed as a senior director of state government relations for an insurance company and earns roughly $163,000 per year. For her performance in 2018, she received a performance bonus in the neighborhood of $30,000 in 2019. She expected to continue to receive bonuses.

Duane was forty-five at the time or trial and continued to reside in Iowa. He has both a law degree and a PhD in chemistry, both of which were obtained before the marriage. Duane used to practice law with his father's law firm, earning between $120,000 and $180,000 per year, but he and his father "split ways" in 2013. He did not work for a period of time, then began working for an insurance company in 2014 for about a year, earning around $10 per hour. In 2015, he discontinued full-time employment for about a year, during which he did some pro-bono legal work, which continued through early 2018. In 2016, he also began working as a real estate agent, which continued until February 2018. At that time, Duane's license to practice law was suspended, and he relinquished his real estate license. Since discontinuing practicing law with his father's firm, Duane has essentially been supported financially by Angela. At the time of trial, Duane was working for a temp agency that had him placed at a safety equipment lab, earning $13 per hour with no benefits. In his testimony, however, he agreed he is certainly capable of earning more than $100,000 per year. At the time of trial, Duane was

covered by Angela's medical insurance. Duane testified he suffers from severe depression, post-traumatic stress disorder, an autoimmune thyroid disorder, and an autoimmune testosterone disorder resulting in mood fluctuations.

During the marriage, the parties did not live a lavish lifestyle. They took few vacations, lived in a modest home, and drove older vehicles.

The parties separated in February 2018, when, as Angela testified, Duane "threatened to kill [her] and attorneys and judges, and also tried to strangle [her] in bed." According to Angela, Duane recently lost an appeal in a lawsuit he had against his parents

> [a]nd he started talking about the need to kill people, and he talked about going to the State Bar meeting and killing attorneys, and also talked about going to the state judges conference and killing judges. And he said that I could either help him or he would kill me too.

The next morning, Angela awoke to Duane on top of her with his hands around her throat. Angela testified to numerous violent outbursts on the part of Duane during the marriage and verbal abuse, involving threats to kill Angela. A few days later, following a police report about Duane's threats, law enforcement came to the marital home, which ultimately resulted in criminal charges being filed against Duane. As a result of his conduct against Angela, Duane pled guilty to first-degree harassment, received a deferred judgment, and was placed on probation. A five-year criminal no-contact order was entered in May.[1] A one-year domestic-abuse

---

[1] The deferred judgment was revoked in November 2018 for violation of the no-contact order. He was sentenced to a suspended term of imprisonment not to exceed two years and was placed on probation for two years.

protective order was also previously entered in March.[2] The order was extended in March 2019.

Angela vacated the marital home and petitioned for dissolution of the parties' marriage in April 2018.[3] Duane was incarcerated at the time and was appointed a guardian ad litem to represent his interests. In June, following Duane's filing of answers and amended answers, Duane moved for a hearing on temporary matters, highlighting the issues of temporary spousal support, tax filings, and temporary attorney fees. By this point, Duane had been released from jail, and an attorney, Dawn Takekawa, entered an appearance on his behalf.

Prior to the temporary matters hearing, both parties submitted affidavits. In his affidavit, Duane[4] requested temporary monthly spousal support of $4500; demanded Angela be responsible to pay various utilities, dues for a timeshare, credit card charges, overdraw fees on life insurance policies, and his outstanding medical bills; asked that Angela turn over two vehicles; requested temporary attorney fees of $5000; and requested their tax return be prepared by his father's law firm and the refund divided equally. As to spousal support, he highlighted his suspended law license and minimal employment, his recent incarceration, Angela's income, his expenses, Angela's alleged physical abuse of him, and Angela's abandonment of the home. He asked for a vehicle that was his before

---

[2] Duane was found in contempt of this order in October 2018 and was sentenced to thirty days in jail.

[3] Despite a provision in the premarital agreement that the parties contribute equally to expenses related to the marital home, Angela has continued to pay for most, if not all, of those expenses.

[4] While Duane's affidavit referred to attached exhibits, no exhibits were attached.

the marriage, as well as another vehicle, and claimed he had no ability to pay attorney fees.

In her affidavit, Angela[5] stated the marriage was fraught with "violent physical and emotional domestic abuse by Duane," providing various examples of Duane's violent outbursts, damage to property in the home, and Duane's actions placing Angela in a state of fear. She explained the abuse culminated in February 2018, when she woke up one morning following an evening of erratic behavior on the part of Duane, with Duane on top of her with his hand around her throat. This incident, as noted, resulted in a civil order of protection. Duane was then charged with domestic abuse assault by impeding air flow and harassment. In May, he pled guilty to harassment in the first degree and received a deferred judgment and probation. In the ensuing months, Duane allegedly violated the protective order on several occasions. Angela explained Duane has a PhD in chemistry, experience in the real estate business, and normally received income from a family trust and other sources. Angela also explained her monthly expenses, not even considering expenses she pays for Duane, exceed her monthly net income, and Duane had limited expenses of only utilities, food, and transportation. She also claimed the disarray of the marital home was a result of Duane's hoarding. Angela filed a supplemental affidavit in response to Duane's affidavit, asserting Duane's claims were baseless and the bulk of his claimed expenses and debts were satisfied.

---

[5] Angela's affidavit was supported by attached exhibits.

A temporary matters hearing was held in July. At the hearing, Takekawa[6] argued Duane's license to practice law was suspended, his license as a real estate agent was not current, and his income from other employment was minimal, while Angela earns roughly $200,000 per year. Based on the parties' income, Duane's expenses resulting from Angela allegedly injuring him, and Angela abandoning the marital home allegedly leaving it in disarray, counsel requested Duane be awarded temporary monthly spousal support of $4500 and $5000 in temporary attorney fees. Angela responded Duane's expenses were largely the result of his criminal actions, any claim he had expenses resulting from Angela injuring him was baseless, Angela's fear from domestic abuse increased her expenses, other alleged expenses had been paid, and attorney fees should be an issue at final disposition.

Following the hearing, Angela filed a motion to enforce the premarital agreement. The court granted the motion and, as a result, found all issues on temporary matters were moot. Duane filed a motion to reconsider, enlarge, or amend, arguing the premarital agreement had no effect on the temporary matters issues. Duane contemporaneously filed an affidavit of financial status, according to which Duane had roughly $830,000 in non-joint assets, $205,000 in joint assets, and $60,000 in debts. Angela resisted the motion. In its September ruling, the court denied Duane's request for temporary support and attorney fees, noting Duane's interest in assets of over $1,000,000, and ordered the issues would be reserved for trial.

---

[6] Duane's guardian ad litem withdrew shortly after the temporary matters hearing given Duane's release from jail and retention of counsel.

Shortly thereafter, on September 20, Takekawa moved to withdraw as Duane's counsel, noting she was recently made aware Duane referred to her using derogatory names and stated displeasure with her services. Based on this, Takekawa advised Duane of her belief there was a breakdown in the attorney-client relationship and Duane would be best served by retaining new counsel; Duane refused to consent to her withdrawal. The next day, Duane left Takekawa a voicemail including the following excerpts: "I will make sure you go burning down in flames" and "I'll make sure your kids will be forever haunted." The motion noted Takekawa limited the content of Duane's communications pursuant to Iowa Rule of Professional Conduct 32:1.6(b)(1)[7] and requested the motion and any ensuing order be filed under seal. Due to the nature of the threats and difficulty in continued representation, Takekawa requested she be permitted to withdraw without hearing. The next day, the court granted the motion without hearing. A second attorney entered his appearance on behalf of Duane roughly two weeks later.

On July 5 2019, following back-and-forth discovery responses and continuance of trial, Duane filed a notice of intent to depose Angela. On July 10, Angela resisted, noting her status as a protected party under the protective order and a criminal no-contact order, Angela lived out of state and could not participate in a deposition before trial, and discovery was closed under the trial scheduling order.[8] On July 21, Duane filed a motion to compel depositions. At a July 25

---

[7] "A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary . . . to prevent reasonably certain death or substantial bodily harm." Iowa R. Prof'l Conduct 32:1.6(b)(1).

[8] At this point, trial was set for August 7, 2019. The November 2018 trial scheduling order mandated that discovery be completed no later than thirty days before trial.

hearing on a motion to continue trial, counsel explained Duane wanted him to depose Angela "for some time" and agreed it should have been completed sooner. Angela's counsel responded, given Angela's recent relocation to a different state, depositions could not be completed before trial, scheduled in August. The hearing culminated in Duane agreeing to his second attorney's request to withdraw, the court granting the same, and the court authorized trial to be continued to a date no later than November 18.[9] The court also denied Duane's motion to compel depositions as untimely and not supported by good cause. Duane's third attorney, Barry Kaplan, entered an appearance on Duane's behalf on August 1.

On September 23, Duane filed a pro se application for rule to show cause, essentially alleging (1) Angela and her counsel were conspiring to set him up for violating the protective order in relation to attempting to return a vehicle that belonged to him under the premarital agreement and (2) Angela and her counsel were in violation of the premarital agreement by failing to provide him possession of the same vehicle. About a week later, Duane withdrew the application, purportedly "under extreme duress," based on Angela's threats. A hearing on the issues was set to be held on November 18 prior to the commencement of trial. But a day before, Duane filed a motion seeking to withdraw his request to dismiss his application for rule to show cause, alleging Angela and her counsel were continuously violating the protective order and criticizing his own counsel's performance.

---

[9] Trial was ultimately scheduled to take place on that date.

On November 18, the court met with the parties and counsel off the record and then explained on the record there was discussion about Duane's counsel, Kaplan, withdrawing, which Duane "apparently concurr[ed]" with. The grounds were not discussed on the record, and the court allowed Kaplan to withdraw. Duane requested more time to find a new attorney, and the court tentatively rescheduled trial for January 6. Two attorneys from a single law firm appeared on Duane's behalf in late December. On January 2, Duane's attorneys moved for a continuance of trial. Following a hearing the next day, the court denied the motion, given the length of time the case had been pending and the multiple continuances.

The day before trial, Angela filed an objection to Duane's presentation of witnesses and exhibits at trial, noting Duane failed to file and exchange a witness and exhibit list and exchange exhibits ten days prior to trial in accordance with the most recent trial scheduling order and said failure would prejudice Angela. Duane resisted, alleging ongoing unethical behavior on the part of Angela and her counsel, as well as ineffectiveness of his own current and prior counsel. Duane also filed nearly 1700 pages of exhibits, and his resistance explained, "I have attached some exhibits I would use and noted the testimony supporting those exhibits in the attached affidavit."

Trial was held on January 6 and 7 as scheduled. At the outset, Angela's counsel reiterated her objection to Duane presenting any testimony beyond his own or any exhibits. Duane's counsel agreed notice of exhibits and witnesses was untimely and withdrew them. Duane complained about his attorney's preparation for trial, but nevertheless agreed to proceed. He agreed his counsel provided competent representation at the close of trial. Following trial, the court requested

the parties to submit briefs on the issues. Angela complied with the request, but Duane did not.

The court issued its decree in February 2020. From the outset, the court found the premarital agreement valid and enforceable. The court went on to agree with Duane that Iowa's status as a no-fault dissolution-of-marriage state rendered allegations of domestic abuse during the marriage irrelevant on the issues of property distribution, spousal support, attorney fees, and costs and, as such, did not rely on any such evidence. As to the marital home, given only the presence of the parties' competing valuations and no appraisal evidence,[10] the court considered the formula contained in the premarital agreement (and advanced by Angela) providing the assessor assesses property at 80% of value and the assessed value of $248,200 to reach an unadjusted value of $297,480.[11] The court then reduced the value based on Duane's claims the house needed repairs, and concluded the value was $280,000. The court awarded the parties' three

---

[10] According to Angela, at the time of trial, the marital home's market value was between $250,000 and $300,000. Based on her equity buy in, Angela believed she was entitled to one-half of the equity in the home, but she was agreeable that the home be distributed to Duane free and clear of any claim by her. According to Duane, he believed the net value of the home was $150,000 alleging, after Angela vacated the home, damage occurred to the home due to the electricity being shut off, freezers defrosting, meat rotting, and liquid coming out of the freezers damaging the floors and attracting rodents, as well as animals getting into the attic resulting in animal feces seeping through the ceilings.

[11] The decree noted the assessed value was $246,200, which appears to have been a typo. In reaching its unadjusted value, the court multiplied the assessed value by 120% ($248,200 x 1.2 = $297,480). However, if the assessed value is 80% of the full value, then a different calculation should have been employed to reach a value of $310,250:

$$\frac{80}{\$248{,}200} = \frac{100}{x} \quad \leftrightarrow \quad 80x = (\$248{,}200)(100) \quad \leftrightarrow \quad x = \frac{(\$248{,}200)(100)}{80} = \$310{,}250$$

dogs, all of which Angela had been caring for since February 2018, to Angela, finding her to be in the better position to care for the dogs, especially in light of the fact that Duane is unable to provide for himself, let alone three expensive dogs. According to the district court's distribution of property, in relation to which the court concluded Duane's litigation-related debts should not be considered marital debts, the parties left the marriage with relatively equal nets assets, Duane in the amount of $1,150,246, and Angela of $1,127,244. Considering the factors contained in Iowa Code section 598.21A(1) (2018), the court declined to award Duane spousal support, given the property distribution, the short length of the marriage, Duane having several years left of employability, Duane's level of education, Duane's failure to show his earning capacity has changed, Duane's poor decisions resulting in his alleged financial crisis, and Duane's failure to show he has meaningfully pursued more gainful employment commensurate with his education and experience. As to attorney fees, the court found Duane

> has caused Angela to incur unnecessary and unwarranted attorney fees required by her need to respond to numerous and often frivolous filings. Angela has also incurred additional attorney fees due to her counsel's need to repeatedly prepare for court hearings and trials that were delayed at the last minute due to Duane's actions.

The court found Duane had a reasonable ability to pay $20,000 of Angela's $32,000 request for attorney fees. Duane filed a motion to reconsider, enlarge, or amend, as well as a supplement to the motion, which was largely denied.

Duane appeals.

## II.    Standard of Review

Generally, appellate review of dissolution proceedings is de novo. Iowa R. App. 6.907; *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). While we

give weight to the factual findings of the district court, especially when considering the credibility of witnesses, we are not bound by them. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). Because the court bases its decision on the unique facts of each case, precedent is of little value. *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009). Rulings on motions to withdraw counsel, discovery, and requests for attorney fees are reviewed for discretionary abuse. *In re Marriage of Erpelding*, 917 N.W.2d 235, 238 (Iowa 2018) (attorney fees); *Fenceroy v. Gelita USA, Inc.*, 908 N.W.2d 235, 241 (Iowa 2018) (discovery); *State v. Miller*, No. 20-0359, 2021 WL 4302693, at *2 (Iowa Ct. App. Sept. 22, 2021) (motions to withdraw).

## III.     Analysis[12]

### A.     Withdrawal of First Counsel

Duane argues the district court erred in allowing his first attorney to withdraw without notice to him or a hearing and allowing the attorney to disclose

---

[12] We note from the outset of our analysis that Duane bases many of his arguments on factual assertions stemming from materials that the district court never considered, namely the exhibits that were improperly uploaded the eve of trial that were withdrawn by counsel and never admitted as evidence. In addition, these materials were not available to the district court in conjunction with its pre-trial rulings. We decline to consider matters on appeal that were not considered by the district court below. *See* Iowa R. App. P. 6.801 ("Only the original documents and exhibits filed in the district court case from which the appeal is taken, the transcript of proceedings, if any, and a certified copy of the related docket and court calendar entries prepared by the clerk of the district court constitute the record on appeal."); *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("[C]ounsel has referred to matters apparently not a part of the record of this appeal. We admonish counsel to refrain from such violations of the rules of appellate procedure. We are limited to the record before us and any matters outside the record on appeal are disregarded.").

privileged attorney-client information. As noted, we review for an abuse of discretion. *Miller*, 2021 WL 4302693, at *2.

We agree with Angela that Duane has failed to preserve error. After counsel sought and obtained approval of withdrawal, Duane lodged no challenge and instead obtained new counsel. In any event, Duane's argument only forwards allegations of his counsel's unethical behavior and conspiring with the opposing side, none of which are supported by the record, and this court is not the appropriate arbiter of such claims. And Duane offers no argument on how the court abused its discretion in granting the withdrawal request based on Duane's threats against counsel or what information disclosed in conjunction with the motion was privileged, nor does he claim his constitutional right to due process encompassing notice and an opportunity to be heard were violated. As a result, we deem those arguments waived. *See* Iowa R. App. P. 6.903(2)(g)(3).

B.      Withdrawal of Third Counsel

Duane argues "the court erred [in] stating [his third attorney] was being ethical in withdrawing when [he] refused to challenge Angela [] with her repeated lies." Again, Duane essentially only complains about his attorney's representation, not the court's decision to allow withdrawal. And the record before us shows Duane agreed counsel had a proper basis for withdrawing. We find no merit in Duane's complaints on this point.

C.      Discovery

Duane argues the court erred in not allowing additional discovery and a deposition of Angela. We also review this claim for an abuse of discretion. *Fenceroy*, 908 N.W.2d at 241.

Generally, Duane claims further discovery and a deposition of Angela would have "cleared up" certain issues. But the issues he cites were developed at trial. Further, when Duane moved to compel a deposition, the trial date was looming, discovery had already closed, and Duane had plenty of time prior thereto to complete the discovery he desired. We find no abuse of discretion in the court denying the belated request for a deposition. Lastly, trial was continued, twice, after the denial of Duane's request for a deposition, and the subsequent trial scheduling orders effectively reopened discovery by extending the time for closing of discovery to thirty days before the new trial dates. Duane could have pursued a deposition during these time frames but failed to do so. The reopening of discovery negates any prejudice from the court's initial denial, and Duane's failure to take advantage of the reopening of discovery does not change that fact. *See Jones v. Univ. of Iowa*, 836 N.W.2d 127, 140 (Iowa 2013) (noting non-prejudicial error in discovery rulings is not a ground for reversal). We find no abuse of discretion on this point.

D.    Credibility

Duane argues the court erred in finding Angela more credible, given her alleged dishonesty about domestic abuse in the past. This argument is generally a rehash of Duane's arguments on depositions, which Duane again argues should have been authorized to "clear up" certain issues bearing on Angela's credibility. Again, the issues cited were developed at trial. He goes on to argue, "the court should not consider any evidence [Angela] put on about [him] being abusive." The district court declined to consider such matters, and so do we. And, while Duane's claims that all the players in the proceedings were conspiring against him may be

supported by his own thought processes, they are not supported by the evidence appropriately included in the record. Finding no error on this brief point, we move on.

E.  Property Valuation

Duane claims the court misvalued property. First, as to the marital home, Duane cites changes in statutory law since execution of the premarital agreement as to how property is valued for assessment purposes. But the operative language of the statute he cites, Iowa Code section 441.21, has not changed since entry of the premarital agreement. *Compare* Iowa Code § 441.21(1)(a)–(b) (2010), *with id.* (2018). Duane also claims Angela violated the agreement by failing to split expenses relating to the home until final dissolution. But this has no bearing on the valuation of the home. Duane highlights his claims about damage to the home, but the district court acknowledged the damage and found a downward adjustment of value was warranted, despite Duane's failure to introduce evidence of the cost of repairs. At the end of the day, the court's valuation of the home was within the range of evidence, so we will not disturb it. *See In re Marriage of Keener*, 728 N.W.2d 188, 194 (Iowa 2007).

Duane complains of the district court's valuation of his dish set and coin collection at $25,000. Duane's financial affidavit valued the set at $20,000 but noted an encumbrance of $25,000, for a negative net value of $5000. He testified the dishes were in the possession of his parents as collateral for a $25,000 loan, but conceded the loan is not secured by a promissory note and the situation was a "loose agreement." On our review, assuming without deciding the court misvalued the dishes, such does not render the property distribution inequitable.

Under the premarital agreement, the dishes were premarital property not subject to division, and the set's inclusion in the property distribution does not result in an inequitable imbalance of the balance sheet. Duane's next complaint that the court used a positive amount of $572.12 instead of a negative balance as to one of his checking accounts in the balance sheet also does not result in an inequity, given the amount of assets in play. While Duane claims the district court was "sloppy and lazy" on this point, Duane's own financial affidavit listed the "net value" of the account as a positive figure. Duane's claims about ex parte communications concerning Angela and a judge not involved in this proceeding under this brief point have nothing to do with property valuation. We accept the district court's property valuation.

F.      Distribution of Property

Duane argues "the court erred in splitting the assets between the parties and did [not] rely on [the] prenuptial agreement." As Angela illustrates, "it is difficult to parse out the specific reasons why Duane believes that the property distribution is not equitable."

First, Duane complains Angela did not abide by the premarital agreement when she failed to turn over property belonging to Duane under the agreement, but this has nothing to do with the court's distribution, and the court ultimately awarded that specific property to Duane. Duane next complains that some of the assets he had at the time of the marriage and set aside as separate property under the premarital agreement—interest in a law firm and some jewelry—are no longer available to him. But, under the premarital agreement, those assets would not have been subject to division, so the complaint does not warrant relief. He next

claims the characterization of his interest in a farm "worth over $700,000 is misleading as the farm is in a trust where [he] does not really [have] anything until he pays off attorney fees and the core of the trust resided in a life estate" with his mother.[13] Again, any interest in that trust goes to Duane under the premarital agreement, and Angela's interest in her family trust in an amount just north of $700,000 would likewise go to her under the agreement. Extricating those nearly equal interests from the balance sheet still leads to an equitable result. As to complaints about debts Duane incurred during the dissolution proceeding, he is also responsible for those as being post separation, as he lodges no complaint about the decree's requirement that each party be responsible for post-separation debts. And we agree with the district court that Duane's debts resulting from frivolous litigation independent of this proceeding and his criminal actions should not be considered marital debt. Duane complains the court did not do a "breakdown of the assets between the valid prenuptial agreement and those during the marriage and do an equitable distribution of the assets acquired during the marriage," but he does not provides us with how the breakdown was inequitable or how a different scheme would better achieve equity between the parties. It is not our role to fill that void on Duane's behalf. *See Inghram v. Dairyland Mut. Ins.*

---

[13] According to Angela, he traditionally received annual or biannual disbursements from his family's farm trust. According to Duane, he is not entitled to funds from the trust until his mother passes away. Angela understood that only applied to a portion of the trust. While Duane valued his interest in the farm trust at $709,000, he stated he only has access to "income from a portion of this," which amounts to $7000 to $8000 per year. He also testified his share is being paid toward sanctions imposed against him in a proceeding he initiated against his parents, and he will not see any income for another "five years or so." He also testified his mother collects the majority of trust income and, both when his mother dies and he attains the age of fifty years, he and his brother will split the trust income.

*Co.*, 215 N.W.2d 239, 240 (Iowa 1974).  As to the dogs, while it is not our duty to determine the best interests of pets, we heed the admonition that we should not put pets in an environment in which they will be abused or uncared for, and we agree with the district court that awarding the dogs to Angela is the better option. *See In re Marriage of Stewart*, 356 N.W.2d 611, 613 (Iowa Ct. App. 1984).

G.      Spousal Support

Duane argues the court erred in not awarding him temporary or permanent spousal support.  "[W]e accord the trial court considerable latitude in making th[e] determination [of spousal support] and will disturb the ruling only when there has been a failure to do equity."  *In re Marriage of Stenzel*, 908 N.W.2d 524, 531 (Iowa Ct. App. 2018) (first and third alterations in original) (quoting *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005)).

Courts may grant an award of spousal support in a dissolution proceeding for a limited or indefinite length of time after considering all of the following relevant factors:

> (a) The length of the marriage.
> (b) The age and physical and emotional health of the parties.
> (c) The distribution of property made pursuant to section 598.21.
> (d) The educational level of each party at the time of marriage and at the time the action is commenced.
> (e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> (f) The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> (g) The tax consequences to each party.

> (h) Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
> (i) The provisions of an antenuptial agreement.
> (j) Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

At trial, Duane testified to his desire for three years of monthly spousal support in the amount of $3000 to help cover his expenses while he gets back on his feet. On appeal, he argues, "An equitable solution is [Angela] pay one-third of her income"—roughly $70,000 per year or $5800 per month—"to the date the dissolution was filed and continues for another five years" or Angela pay "$25000 a year and [Angela] retains all debt."

We turn to the statutory factors. The length of the marriage, roughly ten years, is not near the twenty-year durational threshold warranting an award of support. *See* Iowa Code § 598.21A(1)(a); *In re Marriage of Gust*, 858 N.W.2d 402, 410–11 (Iowa 2015). Both parties are relatively young, in their forties, and, aside from Duane's mental-health issues, are relatively healthy. *See* Iowa Code § 598.21A(1)(b). The distribution of property is relatively equal, with Duane leaving the marriage with a home free and clear of encumbrances, and total assets approximating $1 million. *Id.* § 598.21A(1)(c). Both parties completed their educations before the marriage, and both have law degrees, but Duane's education is more exceptional, being complemented by a PhD in chemistry. *Id.* § 598.21A(1)(d). Although Duane has low income for the time being, he presented no evidence that his earning capacity has decreased in light of his mental health or suspension of his law license—Duane himself took the position he is not

disabled, he has not pursued reinstatement of his law license, and he agreed he is certainly capable of earning more than $100,000 per year. *Id.* § 598.21A(1)(e). During the marriage, the parties did not live a lavish lifestyle; they took few vacations, lived in a modest home, and drove older vehicles. Given Duane's agreement he is capable of six-figure income and the fact that he was awarded a residence free and clear from encumbrances, maintaining the standard of living enjoyed during the marriage would not be unfeasible absent an award of spousal support. *Id.* § 598.21A(1)(f). Recent changes in federal income tax laws would result in spousal support payments by Angela not being tax deductible, and the payments received by Duane would not be taxable. *See In re Marriage of Mann*, 943 N.W.2d 15, 21 (Iowa 2020); *see also* Iowa Code § 598.21A(1)(g).

Duane cites the disparity in the parties' *current* income, the property distribution, his debts, his medical expenses, and Angela's alleged unsavory tactics during the proceedings. But Duane presented little, if any, evidence to show he is entitled to support, and it was his burden to do so. *See In re Marriage of Robert*, No. 11-0876, 2012 WL 2122310, at *5–6 (Iowa Ct. App. June 13, 2012). And our consideration of the statutory factors weighs against an award of spousal support, either temporary or permanent. As a result, we affirm the district court's denial of Duane's requests for spousal support.

H. Partiality

Duane complains the court was not impartial. He targets the trial court not allowing him to make a statement about his trial attorney's lack of communication or preparation for trial at the commencement of trial. He also claims the trial court's decree and ruling on his post-trial motion put him down and were condescending

and the judge was lazy. We find these complaints have no bearing on the outcome of this case and do not consider them further.

I.      Attorney Fees

Duane argues he should have been awarded temporary attorney fees and Angela should not have been awarded trial attorney fees. As noted, we review awards of attorney fees for an abuse of discretion. *Erpelding*, 917 N.W.2d at 238. Trial attorney fee awards generally depend on the need of the party seeking the award and the ability of the other party to pay. *See In re Marriage of Towne*, ___ N.W.2d ___, ___, 2021 WL 3075938, at *8 (Iowa Ct. App. 2021).

We begin with the court's denial of Duane's request for temporary attorney fees. In support of his request for temporary attorney fees, Duane submitted an affidavit only highlighting his limited income and resulting inability to fund representation. In conjunction with the court's reconsideration of whether the issue was moot, Duane submitted a financial affidavit to the court, according to which Duane had roughly $830,000 in non-joint assets, $205,000 in joint assets, and $60,000 in debts. Given Duane's significant assets, the court concluded an award of temporary attorney fees was not warranted. On our review, we are unable to conclude the district court abused its discretion.

We turn to the court's award of trial attorney fees to Angela. As noted, such an award is predicated upon on the need of the party seeking the award and the ability of the other party to pay. *Id.* While we agree this proceeding was plagued with Duane's stall tactics and frivolity and would normally warrant some kind of an award in favor of Angela, she has access to liquid assets—namely her family trust in excess of $700,000—and a high-paying job, while Duane's access to liquid

assets is far more restrained and his current income is minimal.  On our review, we are unable to conclude Angela has a need for an award or that Duane has an ability to pay.  We modify the decree to vacate the attorney fee award.  We also deny Angela's request for appellate attorney fees.  However, costs on appeal are assessed to Duane.

**AFFIRMED AS MODIFIED.**